# AMENDMENT NO. FIVE

This Amendment No. Five ("Amendment") is entered into effective as of the date this Amendment is last signed by both Telephone Company and Electric Company where indicated below, by and between **United Telephone Southeast, LLC d/b/a CenturyLink**, successor-in-interest to United Telephone Southeast, Inc. and United Inter-Mountain Telephone Company ("Telephone Company") and **Greeneville Light & Power System** ("Electric Company:"). Telephone Company and Electric Company may sometimes be referred to in this Amendment individually as a "party" or collectively as the "parties."

## RECITALS

WHEREAS, Telephone Company and Electric Company entered into that certain Agreement dated July 1, 1980 regarding the joint use of poles, as amended by that certain Amendment dated December 31, 1980, that certain Amendment No. Two dated December 31, 1982, that certain Amendment No. Three dated November 13, 1995, and that certain Amendment No. Four dated January 4, 2010 (collectively, "Agreement"); and

WHEREAS, Telephone Company and Electric Company desire to amend the Agreement upon the terms and conditions set forth in this Amendment.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are acknowledged by the parties, Telephone Company and Electric Company amend the Agreement as follows:

1.  **Article XII, Section A:** Article XII, Section A of the Agreement is deleted in its entirety and replaced with the following:

    A.    For the calendar years 2010 through 2014, adjustment payments per pole due from Telephone Company to Electric Company, subject to the provision of Article XIII, shall be $32.00 per annum. Adjustment payments per pole due from Electric Company to Telephone Company shall be $27.00 per annum. Rates stated within this paragraph are effective January 1, 2010.

    The Adjustment Payment Rates for both 'joint-use poles owned by Electric Company' and 'joint-use poles owned by Telephone Company' shall be escalated effective January 1, 2015 and annually thereafter through the end of 2019, based on the then-current changes in costs established for the South Atlantic Division by the Handy-Whitman Index of Public Utility Construction Costs. The index shall be the index given for FERC Account 364 – Distribution Plant – Poles, Towers and Fixtures.

    The formula to be utilized during this period 2015 – 2019 for the adjustment of rental will be as follows:


EXHIBIT
4

(1) Initial rental charges for this agreement shall be $ 32.00 per annum from Telephone Company to Power Company and $27.00 per annum from Power Company to Telephone Company.

(2) Handy-Whitman Index of Public Utility Construction Costs – FERC Account 364 – Distribution Plant – Poles, Towers and Fixtures published for July 1, 2013.

(3) Handy-Whitman Index of Public Utility Construction Costs – FERC Account 364 – Distribution Plant – Poles, Towers and Fixtures published for July 1 of the year immediately preceding the year for which the rate is being calculated.

Adjusted rental charges = (1) x (3) divided by (2)

For example:

The 2015 rate = $32.00 x $\dfrac{\text{Handy-Whitman Index July 1, 2014}}{\text{Handy-Whitman Index July 1, 2013}}$

The 2016 rate = $32.00 x $\dfrac{\text{Handy-Whitman Index July 1, 2015}}{\text{Handy-Whitman Index July 1, 2013}}$

Subsequent to the period ending December 31, 2019, the Adjustment Payment Rates, if not agreed upon between the parties, shall be determined as described in Article XIII, as amended hereby.

2. **Article XII, Section B:** The following language is added to Article XII, Section B:

"The pole counts determined through this process shall be used as the basis for the adjustment payments for the subsequent year."

3. **Article XII, Section C:** Article XII, Section C of the Agreement is deleted in its entirety and replaced with the following:

"C. The total adjustment payment due each party shall be determined by multiplying the poles owned by each party, tabulated as indicated in the first paragraph of Section "B" of this Article, by the adjustment payment in Section "A" of this Article.

The smaller total amount covered above shall be deducted from the larger amount and the Electric Company or the Telephone Company, whichever shall owe the larger amount, shall pay to the other the difference between said two amounts as

the net adjustment payment due for the year involved. Within thirty (30) days after the first day of December next ensuing after the date of this agreement, and within thirty (30) days after the first day of December each year thereafter, during the time this agreement shall be in effect, the party to which said adjustment payment is owed, as of said first day of December, shall submit a written statement to the other party giving the correct amount owed by the other party.

The adjustment payment herein shall be paid in advance in four equal, quarterly installments. The party with the larger amount, as referenced above, will issue an invoice for the quarterly installment before the first day of the quarter for which the adjustment payment shall be made.

The adjustment payment herein provided for shall be due on the 30th day of the quarter. In the event such invoice has not been issued and received in advance of the first day of the quarter, the invoice due date shall be determined to be the 30th day after the date of receipt.

In the event an adjustment payment invoice is not paid within ten (10) days after the invoice due date, interest on the adjustment payment will bear interest at the rate of 10% per annum.

Any recurring cost incurred by the Owner, beyond the control of the Owner, solely because of the use of the Owner's poles by the Licensee, shall be paid by the Licensee."

4. **Article XIII** is hereby deleted in its entirety and replaced as follows:

"ARTICLE XIII

Periodical Revisions of Adjustment Payment Rate

A.        Upon written request of either Party to be provided no earlier than January 1, 2019, and no later than April 1, 2019, adjustment payment rates for the period beginning January 1, 2020, shall be subject to joint review and revision as provided under Section B of this Article. In the event neither Party requests a joint review and revision of said rates, the annual adjustment payment rates for 2020 shall be set by adjusting the 2019 rates using the Handy-Whitman Index formula as described in the Amendment to Article XII, Section A contained hereinabove. In any calendar year after 2020 in which neither Party submits, no earlier than January 1 and no later than April 1, a written request for joint review and revision of the adjustment payment rates for the next succeeding year, the adjustment payment rates for that next succeeding year shall be set by adjusting the existing rates using the Handy-Whitman Index formula as described in the Amendment to Article XII, Section A, contained above, unless the Parties shall be considered in dispute as discussed in Section C hereinbelow.

B. Revisions of the adjustment payments shall be based on experience resulting from previous administration of this agreement. Any changes shall take into account the original cost factors pertinent to the establishing of the pole facilities involved in all joint use existing under this agreement at the time of said review. If, within ninety (90) days after the receipt of such request, by either party from the other, the parties hereto fail to agree upon a revision of such rate, then the adjustment payment per pole so to be paid shall be an amount equal to one-half of the then average annual total cost per pole, based on average in-plant cost factors, of providing and maintaining the joint poles covered by this agreement. In case of a revision of the adjustment payment as herein provided, the new rate shall be applicable until again revised.

C. If the parties fail to reach agreement following a written request for joint review and revision as discussed in Section A hereinabove, and either party refuses to accept the rates which would be determined by the language of Section B hereinabove, then the parties shall be considered in dispute. To resolve the dispute, the parties hereto agree to engage in mandatory mediation utilizing the procedures set forth in the applicable mediation rules of the United States District Court for the Eastern District of Tennessee, Greeneville, notwithstanding there being no civil suit filed. Thereafter, if mediation proves unsuccessful, either party may then commence action in the United States District Court for the Eastern District of Tennessee, Greeneville, to resolve any then-existing disputes, including, but not limited to, seeking determination of what the adjustment payment rates per pole should be."

5. Except as amended in this Amendment, the terms and conditions of the Agreement remain in full force and effect. In the case of a conflict between the terms and conditions of this Amendment and those of the Agreement, the terms and conditions of this Amendment will control.

6. This Amendment is effective on the date this Amendment is last signed by both Electric Company and Telephone Company where indicated below ("Effective Date").

7. This Amendment may be signed in several counterparts, each of which will be fully effective as an original and all of which together will constitute one and the same instrument. Signatures to this Amendment transmitted by facsimile or electronic mail will be deemed the equivalent of delivery of an original signature, provided that the party delivering its signature by facsimile or electronic mail promptly thereafter delivers this Amendment with the original signature to the other party.

UNITED TELEPHONE SOUTHEAST LLC d/b/a CenturyLink

By:_____

Name: _____
Title: _____
Date: _____

GREENEVILLE LIGHT & POWER SYSTEM

By: _William M Carroll_

Name: William M. Carroll
Title:   General Manager
Date: _____10/27/10_____