# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE, TENNESSEE

| | | |
|---|---|---|
| **JOHNSON CITY ENERGY AUTHORITY** | ) | |
| **d/b/a BRIGHTRIDGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:20-cv-00030** |
| | ) | |
| **UNITED TELEPHONE SOUTHEAST, LLC** | ) | |
| **d/b/a CenturyLink,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## CENTURYLINK'S RESPONSIVE PLEADINGS
_____

Comes the Defendant United Telephone Southeast, LLC, d/b/a CenturyLink UTS ( "CenturyLink"), and for its responsive pleadings, including Answer and Counterclaims, to the "Complaint for Declaratory Judgment" ("Complaint") [Doc. 1] filed by the Plaintiff Johnson City Energy Authority d/b/a BrightRidge ("BrightRidge") pleads as follows:[1]

## ANSWER

For its Answer to the Complaint [Doc. 1] filed against it by BrightRidge, CenturyLink states, avers and alleges upon information and belief, as follows:

1. Responding to the first sentence of Paragraph 1 of the Complaint, CenturyLink admits only that prior to sometime in March 2017, there was a municipal *electric* supply entity known as "Johnson City Power Board" (hereinafter, "JCPB-Electric") that was created as part of

---

[1] CenturyLink agreed to have its counsel accept service of process of BrightRidge's Complaint. BrightRidge served on CenturyLink a summons that had not been issued by the Clerk of Court. *See* 2/19/20 Unnumbered Docket Entry (JBR) ("No summons received from initiating documents. Therefore, summons not issued as to United Telephone Southeast, LLC"); Doc. 6. Nonetheless, CenturyLink, operating as if the summons had been properly issued, submits its responsive pleadings within the time limits prescribed by the *Federal Rules of Civil Procedure*.

1

the City of Johnson City under the Municipal Electric Plant Law of 1935, Chapter 32 of the 1935 Public Acts of the Tennessee General Assembly, now codified at Tenn. Code Ann. §§ 7-52-101 *et seq.* Responding to the second sentence of Paragraph 1 of the Complaint, CenturyLink admits only that BrightRidge was formed under the Municipal Energy Authority Act, Chapter 995 of the 2016 Public Acts of the Tennessee General Assembly, now codified at Tenn. Code Ann. §§ 7-36-101 *et seq.* CenturyLink avers that pursuant to BrightRidge's filings with the Tennessee Secretary of State, BrightRidge was formed as a nonprofit municipal energy authority on November 15, 2016, and on March 29, 2017 BrightRidge registered "Johnson City Power Board" and "JCPB" as assumed names for the new entity. Responding to the third sentence of Paragraph 1 of the Complaint, the allegations therein call for a legal conclusion to which a response is not required from CenturyLink. CenturyLink, though, avers that although BrightRidge assumed the name of "Johnson City Power Board" in or around March 2017, BrightRidge is a separate entity with a different business format from JCPB-Electric. That is, JCPB-Electric was a municipal agency of the City of Johnson City that was an electric supply company in the business of purchasing electricity from the TVA and selling that electricity to its customers; whereas BrightRidge is a separate entity from the City of Johnson City and operates under an energy authority charter which allows it to provide services completely unrelated to electric supply, including "telecommunications services," which are defined by the authorizing statutes to include telephone, cable television, voice, data, or video transmissions, and Internet access and related services. *See* Tenn. Code Ann. § 7-36-102. Responding to the fourth sentence of Paragraph 1 of the Complaint, CenturyLink admits only that BrightRidge is a Tennessee municipal energy authority – exempt, with a principal place of business at 2600 Boones Creek Rd, Johnson City, Tennessee 37615-4448. CenturyLink is without sufficient information to admit or deny whether BrightRidge's business

2

activities are confined within the geographic boundaries of the State of Tennessee. CenturyLink denies any other allegations of Paragraph 1.

2.      Responding to the first sentence of Paragraph 2 of the Complaint, CenturyLink admits only that it is a limited liability company organized under the laws of the Commonwealth of Virginia, with a principal place of business at 100 CenturyLink Dr., Monroe, Louisiana 71203-2041. Responding to the second sentence of Paragraph 2 of the Complaint, CenturyLink admits only that it offers communication services, including telephone and Internet services in the Johnson City, Tennessee area, including areas in which BrightRidge now wants to offer communication services such as voice and Internet services. Responding to the third sentence of Paragraph 2 of the Complaint, CenturyLink is without sufficient information to admit or deny the location in which the July 1, 1980 Agreement (hereinafter, the "1980 Agreement") referenced in the Complaint was executed and entered, as the 1980 Agreement is silent as to that location. Responding to the fourth sentence of Paragraph 2 of the Complaint, CenturyLink admits only that it has neither been a Tennessee corporation or a Tennessee limited liability company, nor had its principal place of business in the State of Tennessee. As stated, though, CenturyLink and its predecessor entities have provided communication services in the State of Tennessee since 1966.

3.      Responding to the first sentence of Paragraph 3 of the Complaint, CenturyLink admits only that BrightRidge has predicated jurisdiction in this action upon diversity of citizenship under 28 U.S.C. §1332. Responding to the second, third and fourth sentences of Paragraph 3 of the Complaint, CenturyLink admits only that the parties are diverse, as BrightRidge is a Tennessee municipal energy authority - exempt that is organized under the laws of the State of Tennessee, while CenturyLink is a limited liability company organized under the laws of the Commonwealth of Virginia with a principal place of business at 100 CenturyLink Drive, Monroe, Louisiana,

71203-2041, and whose sole member is Embarq Corporation, a Delaware corporation with a principal place of business in Monroe, Louisiana. Responding to the fifth sentence of Paragraph 3 of the Complaint, CenturyLink admits only that the amount in controversy exceeds $75,000.00, exclusive of costs and interests. CenturyLink avers, though, that BrightRidge has strategically misaligned itself as the party-plaintiff, as it is BrightRidge as a party-defendant that owes the amount in controversy to CenturyLink. *See* Counterclaims, below, which are incorporated herein by reference.

4.      Responding to Paragraph 4 of the Complaint, CenturyLink admits that venue is proper with this Court.

5.      Responding to the first sentence of Paragraph 5 of the Complaint, CenturyLink admits only that United Inter-Mountain Telephone Company ("UIMTC") entered into the 1980 Agreement with JCPB-Electric on July 1, 1980. CenturyLink also admits that it is a successor-in-interest to the rights and obligations of UIMTC under the 1980 Agreement, and that BrightRidge asserts that it is the successor-in-interest to the rights and obligations of JCPB-Electric under the 1980 Agreement. Responding to the second sentence of Paragraph 5 of the Complaint, CenturyLink admits only that the 1980 Agreement has been amended five times since its initial effective date. Responding to the third sentence of Paragraph 5 of the Complaint, CenturyLink denies that Exhibit 1 to BrightRidge's Complaint contains the original 1980 Agreement and first three amendments thereto. CenturyLink avers that it has attached a true and accurate copy of the 1980 Agreement as Exhibit A to its Counterclaims below, and the first three amendments thereto as Exhibits B-D to those Counterclaims.

6.      Responding to the first sentence of Paragraph 6 of the Complaint, CenturyLink avers that the three amendments to the 1980 Agreement speak for themselves. Responding to the

4

second sentence of Paragraph 6 of the Complaint, CenturyLink admits only that in accordance with the 1980 Agreement, as amended, it has rented designated space for attachment of its communication services facilities on joint use utility poles owned by BrightRidge, and that BrightRidge has rented designated space for attachment of its electric supply facilities on joint use utility poles owned by CenturyLink. CenturyLink also admits that BrightRidge has more of these utility poles than CenturyLink.

7. Responding to Paragraph 7 of the Complaint, CenturyLink objects and moves for the Court to strike, pursuant to Rule 12(f) of the *Federal Rules of Civil Procedure*, the allegations contained therein as they relate to an immaterial and impertinent matter. Without waiving its objection and motion, to the extent that a further response is required, CenturyLink denies the allegations contained in Paragraph 7 of the Complaint, except that CenturyLink admits that JCPB-Electric was part of a group of municipal electric utilities that intervened in Docket No. 08-00219 before the Tennessee Regulatory Authority. CenturyLink denies it committed any wrongful act, and denies all remaining allegations of Paragraph 7.

8. Responding to Paragraph 8 of the Complaint, CenturyLink objects and moves for the Court to strike, pursuant to Rule 12(f) of the *Federal Rules of Civil Procedure*, the allegations contained therein, as well as Exhibit 2 referenced therein, as they relate to an immaterial and impertinent matter. Without waiving its objection and motion, to the extent that a further response is required, CenturyLink denies the allegations contained in the first sentence of Paragraph 8 of the Complaint. In response to the remaining allegations of that Paragraph 8, CenturyLink admits it entered into the agreement attached as Exhibit 2 to the Complaint (2009 Settlement Agreement). CenturyLink respectfully refers the Court to Exhibit 2 for its terms, content and meaning, and, to the extent those terms, content or meaning differ from the allegations of Paragraph 8 of the

5

Complaint, those allegations are denied. CenturyLink denies it committed any wrongful act, and denies all remaining allegations in Paragraph 8.

9.     Responding to Paragraph 9 of the Complaint, CenturyLink objects and moves for the Court to strike, pursuant to Rule 12(f) of the *Federal Rules of Civil Procedure*, the allegations contained therein as they relate to an immaterial and impertinent matter. Without waiving its objection and motion, to the extent that a further response is required, CenturyLink denies that Exhibit 3 to the Complaint is the fourth amendment to the 1980 Agreement. CenturyLink avers that it has attached the fourth amendment to the 1980 Agreement as Exhibit E to its Counterclaims below. CenturyLink respectfully refers the Court to Exhibit E of its Counterclaims for its terms, content and meaning, and, to the extent those terms, content or meaning differ from the allegations of Paragraph 9 of the Complaint, those allegations are denied. CenturyLink denies it committed any wrongful act and denies all remaining allegations in Paragraph 9.

10.     Responding to Paragraph 10 of the Complaint, CenturyLink objects and moves for the Court to strike, pursuant to Rule 12(f) of the *Federal Rules of Civil Procedure*, the allegations contained therein, as they relate to an immaterial and impertinent matter. Without waiving its objection and motion, to the extent that a further response is required, CenturyLink admits the allegations contained in Paragraph 10 of the Complaint, except CenturyLink denies any allegation that it failed to negotiate in good faith or committed any other wrongful act.

11.     Responding to Paragraph 11 of the Complaint, CenturyLink objects and moves for the Court to strike, pursuant to Rule 12(f) of the *Federal Rules of Civil Procedure*, the allegations contained therein as they relate to an immaterial and impertinent matter. Without waiving its objection and motion, to the extent that a further response is required, CenturyLink denies that Exhibit 4 to the Complaint is the fifth amendment to the 1980 Agreement. CenturyLink avers that

it has attached the fifth amendment to the 1980 Agreement as Exhibit F to its Counterclaims below. In addition, CenturyLink admits a mediation occurred which resulted in a settlement agreement that gave rise to the fifth amendment to the 1980 Agreement and dismissal of Case No. 2:10-cv-48. CenturyLink denies it committed any wrongful act and denies all remaining allegations in Paragraph 11.

12. Responding to Paragraph 12 of the Complaint, CenturyLink objects and moves for the Court to strike, pursuant to Rule 12(f) of the *Federal Rules of Civil Procedure*, the allegations contained therein as they relate to an immaterial and impertinent matter. Without waiving its objection and motion, to the extent that a further response is required, CenturyLink denies that Exhibit 4 to the Complaint is the fifth amendment to the 1980 Agreement. CenturyLink avers that it has attached the fifth amendment to the 1980 Agreement as Exhibit F to its Counterclaims below. CenturyLink respectfully refers the Court to Exhibit F of its Counterclaims for the fifth amendment's terms, content and meaning, and, to the extent those terms, content or meaning differ from the allegations of Paragraph 12 of the Complaint, those allegations are denied. CenturyLink denies it committed any wrongful act and denies any remaining allegations of Paragraph 12.

13. Responding to Paragraph 13 of the Complaint, CenturyLink objects and moves for the Court to strike, pursuant to Rule 12(f) of the *Federal Rules of Civil Procedure*, the allegations contained therein, as they relate to an immaterial and impertinent matter. Without waiving its motion, to the extent that a further response is required, CenturyLink admits CenturyLink was sued by non-parties to this action in Case No. 2:13-cv-00267. BrightRidge has failed to specify the additional settlement agreement/s to which it alludes, and therefore, CenturyLink is presently without sufficient information to admit or deny the allegations contained therein. CenturyLink, though, would respectfully refer the Court to any such written agreements for their respective

7

terms, content and meaning, and, to the extent those terms, content or meaning differ from the allegations of Paragraph 13 of the Complaint, those allegations are denied. CenturyLink denies it committed any wrongful act, and denies any remaining allegations of Paragraph 13.

14. Responding to Paragraph 14 of the Complaint, CenturyLink admits that BrightRidge came into existence by no later than March 31, 2017 but avers that pursuant to BrightRidge's filings with the Tennessee Secretary of State, BrightRidge was actually formed on November 15, 2016. As for BrightRidge's allegation that it received all rights and obligations of JCPB-Electric under the 1980 Agreement, as amended, CenturyLink admits only that BrightRidge asserts that it is the assignee of JCPB-Electric. To the extent that BrightRidge is the assignee of JCPB-Electric, then BrightRidge has no greater rights than those possessed by JCPB-Electric under the 1980 Agreement at the time the agreement was assigned to BrightRidge.

15. Responding to the first sentence of Paragraph 15 of the Complaint, CenturyLink admits only that it and BrightRidge have continued to operate under the 1980 Agreement, as amended, since BrightRidge's formation in or around March 2017. Responding to the second sentence of Paragraph 15, CenturyLink admits that it has offered communication services to its customers, including telephone and Internet services, for decades, but that BrightRidge only began offering communication services, including voice and Internet services, within the past two years, and prior to that BrightRidge and its claimed predecessor in interest JCPB-Electric provided only electric supply services. CenturyLink denies that the upgrades to its technological evolution of its communication services from traditional telephone services to include modern technology such as Internet services is comparable to BrightRidge's transformation from an electric supply entity to a provider of communication services such as voice, Internet and video services. CenturyLink

admits the third sentence of Paragraph 15 of the Complaint. Except as specifically admitted herein, CenturyLink denies any remaining allegations contained in Paragraph 15.

16.     Responding to the first sentence of Paragraph 16 of the Complaint, CenturyLink admits only that it has installed its communication facilities within the designated space that it has rented on joint use poles owned by BrightRidge, and within the designated space for communication facilities on CenturyLink's own poles. Responding to the second sentence of Paragraph 16 of the Complaint, CenturyLink avers that it complied with the 1980 Agreement, as amended, when it installed its communication facilities within the designated communication space that it has rented under the 1980 Agreement on joint use poles owned by BrightRidge. Responding to the third sentence of Paragraph 16 of the Complaint, the allegations contained therein pertain to legal conclusions drawn by BrightRidge to which a response is not required from CenturyLink. CenturyLink, though, expressly denies that Article VI and Article IX of the 1980 Agreement were applicable to its communication attachments within the designated communication space that it has rented on joint use poles owned by BrightRidge; and also denies that it failed to comply with the 1980 Agreement. Responding to the fourth sentence of Paragraph 16 of the Complaint, the allegations contained therein pertains to a legal conclusion drawn by BrightRidge to which a response is not required from CenturyLink. Responding to the fifth and sixth sentences of Paragraph 16 of the Complaint, CenturyLink objects and moves for the Court to strike, pursuant to Rule 12(f) of the *Federal Rules of Civil Procedure*, the allegations contained therein, as they relate to an immaterial and impertinent matter. Without waiving its objection and motion, to the extent that a further response is required, CenturyLink avers that it has only installed communication facilities within the designated communication space that it rented on the joint use poles owned by BrightRidge; and further avers that BrightRidge is neither a party to, nor

beneficiary of, CenturyLink's agreements with other communication service providers (e.g., cable or Internet) concerning attachments in the designated communication space of poles owned by CenturyLink. CenturyLink denies that it has ever permitted any electric supply entity to attach communication facilities in the designated communication space of its poles without paying rental for that space in addition to any rental paid for attachments in the designated electric supply space on CenturyLink poles.

17.     Responding to Paragraph 17 of the Complaint, CenturyLink admits that a dispute has arisen between it and BrightRidge. CenturyLink avers that the dispute arises from BrightRidge's unlawful torts (e.g., trespasses/conversion) and/or breaches of the 1980 Agreement, as amended, in making attachments outside of the designated electric supply space that BrightRidge rented on CenturyLink's poles, as set forth in more detail in the Counterclaims below, which are incorporated by reference herein.

18.     Responding to Paragraph 18 of the Complaint, CenturyLink denies that Exhibit 1 to the Complaint is the 1980 Agreement. CenturyLink avers that it has attached a true and accurate copy of the 1980 Agreement as Exhibit A to its Counterclaims below. CenturyLink further avers that the 1980 Agreement, as amended, speaks for itself, and that in construing that agreement the Court is constrained to looking within the four corners of the 1980 Agreement, as amended, as a whole. Except as specifically admitted herein, CenturyLink denies any remaining allegations contained in Paragraph 18.

19.     Responding to the first sentence of Paragraph 19 of the Complaint, CenturyLink admits only that BrightRidge has installed certain facilities within the designated six feet of electric supply space that BrightRidge has rented on CenturyLink's poles under the 1980 Agreement. Responding to the second sentence of Paragraph 19 of the Complaint, CenturyLink denies that

10

BrightRidge gave proper notice under the 1980 Agreement, but admits only that over CenturyLink's repeated objections and notices to BrightRidge to cease and desist, BrightRidge has already installed, and continues to install, certain communication facilities outside of the six feet of designated electric supply space that BrightRidge rented on CenturyLink's poles under the 1980 Agreement. Responding to the third sentence of Paragraph 19 of the Complaint, CenturyLink denies the allegations contained therein, and denies that BrightRidge has any right, under the 1980 Agreement or otherwise, to install facilities on CenturyLink poles outside the designated six feet of electric supply space BrightRidge has rented under the 1980 Agreement. CenturyLink denies any remaining allegations in Paragraph 19.

20.      Responding to Paragraph 20 of the Complaint, CenturyLink denies the allegations contained therein.

21.      Responding to the first sentence of Paragraph 21 of the Complaint, CenturyLink admits only that it disagrees with BrightRidge's interpretation of the 1980 Agreement, as amended, and reliance on purported extrinsic evidence to vary and contradict its terms in violation of the parol evidence doctrine. Responding to the second sentence of Paragraph 21 of the Complaint, CenturyLink admits only that BrightRidge's attachments of communication facilities outside the designated six feet of electric supply space rented by BrightRidge on CenturyLink's poles are tortious (e.g., trespasses/conversion), and/or breaches of the 1980 Agreement, as amended. Responding to the third sentence of Paragraph 21 of the Complaint, CenturyLink objects and moves for the Court to strike, pursuant to Rule 12(f) of the *Federal Rules of Civil Procedure*, the allegations contained therein, as they relate to an immaterial and impertinent matter, specifically pre-litigation settlement negotiations. Without waiving its objection and motion, CenturyLink admits only that it tried to negotiate an amicable resolution (before resorting to litigation) to

BrightRidge's wrongful conduct, generally along the terms set forth in subparts 1-4 of the third sentence of Paragraph 21 of BrightRidge's Complaint. BrightRidge, the putative tortfeasor and/or contract breacher, though, opted for procedural fencing by jump suing (prior to the declaration of an impasse to the negotiations) the natural plaintiff, CenturyLink, via this pending action, so as to strategically misalign the parties, preemptively defeat actions grounded in tort and contract involving rights already accrued by reason of BrightRidge's wrongful conduct, and seek an *ex post facto* declaration of non-liability. Therefore, CenturyLink requests that the Court realign the parties (with CenturyLink as the plaintiff, and BrightRidge as the defendant), dismiss BrightRidge's demand for a declaratory judgment, and award CenturyLink the relief it demands in its Counterclaims below.

22.      Responding to Paragraph 22 of the Complaint, the allegations therein are BrightRidge's self-serving proclamation of its position to which a response is not required from CenturyLink.

23.      Responding to Paragraph 23 of the Complaint, the allegations therein pertain to BrightRidge's summary of its allegations in Paragraphs 1-22 of its Complaint. Accordingly, CenturyLink incorporates by reference as if fully set forth herein Paragraphs 1-22, along with Paragraphs 24-32, of this Answer, as well as CenturyLink's Counterclaims below. In addition, CenturyLink specifically denies that it has breached the 1980 Agreement, as amended, while averring that BrightRidge's allegation to the contrary is contradictory of BrightRidge's procedural posturing of this action as a declaratory judgment under 28 U.S.C. § 2201.

24.      Responding to Paragraph 24 of the Complaint, the allegations therein pertain to BrightRidge's demand for relief to which a response is not required from CenturyLink. To the extent that a further response is required, CenturyLink denies that BrightRidge is entitled to a

declaratory judgment. CenturyLink requests that the Court realign the parties (with CenturyLink as the plaintiff, and BrightRidge as the defendant), dismiss BrightRidge's demand for a declaratory judgment, and award CenturyLink the relief it demands in its Counterclaims below.

25. CenturyLink denies each and every averment of BrightRidge's Complaint that is not specifically admitted herein.

26. CenturyLink denies that BrightRidge is entitled to the relief it seeks in its Complaint or to any relief, and moves the Court to dismiss BrightRidge's claims against it with prejudice and with all costs, including discretionary costs, assessed against BrightRidge.

27. CenturyLink relies upon the first material breach doctrine to the extent proven applicable by investigation and discovery.

28. CenturyLink relies upon the defenses of laches, estoppel, failure of consideration, mistake and/or waiver to the extent proven applicable by investigation and discovery.

29. CenturyLink relies upon the defense of Statute of Frauds to the extent proven applicable by investigation and discovery.

30. CenturyLink relies upon the defense of BrightRidge's failure to mitigate.

31. CenturyLink relies upon all defenses afforded to it at law and/or in equity, including but not limited to all applicable statutes of limitations and/or statutes of repose, if proven applicable by investigation and discovery.

32. CenturyLink moves the Court for permission to amend this Answer and plead additional defenses and to plead its defenses more specifically, if necessary, at the conclusion of its investigation and discovery proceedings.

**WHEREFORE**, premises considered, CenturyLink prays that BrightRidge's Complaint be dismissed with prejudice, that the parties be realigned so that CenturyLink is the party-plaintiff

and BrightRidge is the party-defendant, and that CenturyLink be awarded the relief that it seeks in its Counterclaims below. CenturyLink also prays that all costs, including discretionary costs pursuant to Rule 54 of the *Federal Rules of Civil Procedure*, be assessed against BrightRidge and that CenturyLink be granted such other relief as the Court deems appropriate.

## COUNTERCLAIMS

For its Counterclaims against BrightRidge, CenturyLink states, avers and alleges upon information and belief, as follows:

### General Statement of the Counterclaims

1.     Material to certain of CenturyLink's Counterclaims herein are approximately 10,000 utility poles that CenturyLink owns in Northeast Tennessee. CenturyLink, through a predecessor-in-interest, rented the uppermost six (6) feet of space on those poles (the electric supply space) to JCB-Electric, BrightRidge's claimed predecessor-interest, under the 1980 Agreement referenced in BrightRidge's Complaint. These Counterclaims arise from BrightRidge's tortious conduct, or alternatively contractual breaches, in attaching facilities to other spaces on CenturyLink's poles that have not been rented by BrightRidge and that BrightRidge has no right to occupy.

### The Parties

2.     CenturyLink's full name is United Telephone Southeast, LLC d/b/a CenturyLink UTS. CenturyLink is a limited liability company organized under the laws of the Commonwealth of Virginia, with a principal place of business at 100 CenturyLink Dr., Monroe, Louisiana 71203-2041. CenturyLink's sole member is Embarq Corporation, a Delaware corporation with a principal place of business in Monroe, Louisiana.

3. CenturyLink is a communication services provider. CenturyLink holds a valid certificate from the Tennessee Regulatory Authority permitting it to provide communication services within this State. CenturyLink provides communication services to hundreds of thousands of customers in Northeast Tennessee, including but not limited to customers in Washington County, Carter County, Greene County and Sullivan County.

4. To the extent that the 1980 Agreement is material to these Counterclaims, CenturyLink is the successor-in-interest to UIMTC, who was the communication company that executed the 1980 Agreement.

5. CenturyLink brings these Counterclaims against BrightRidge. BrightRidge is a non-profit corporation organized under the laws of the State of Tennessee, with a principal place of business at 2600 Boones Creek Rd, Johnson City, Tennessee 37615-4448. BrightRidge is a municipal energy authority, with exempt status, that was formed on November 15, 2016.

6. In or around March 2017, BrightRidge acquired the electric supply system previously owned by the JCPB-Electric and became the provider of electric supply services to tens of thousands of metered customers in Washington County, Tennessee, plus parts of Carter County, Greene County and Sullivan County, Tennessee (the "Electric Service Region"). BrightRidge asserts that it acquired its right to be the electric supply company for the Electric Service Region from JCPB-Electric.

7. Up until sometime in March 2017, JCPB-Electric had been the electric supply company that provided electric supply services to metered customers within the Electric Service Region. During this time, JCPB-Electric was never a communication company and did not provide any services unrelated to electric supply. In fact, JCPB-Electric never offered any communication services such as telephone, video, or Internet services within the Electric Service Region.

15

8.     BrightRidge assumed the names of "JCPB" and "Johnson City Power Board" in or around March 2017, names that had previously been used by JCPB-Electric.

9.     To the extent that the 1980 Agreement is material to these Counterclaims, BrightRidge asserts that it is the successor-in-interest to JCPB-Electric, who was the electric supply company that executed the 1980 Agreement with UIMTC.

10.    In 2018, BrightRidge launched a new business division, namely, BrightRidge Broadband. Through that division, BrightRidge began offering, and/or intends to offer in the future, highspeed internet (fiber and fixed wireless), voice and video services to customers within the Electric Service Region. BrightRidge, though, is neither a competitive local exchange carrier ("CLEC") nor an incumbent local exchange carrier ("ILEC") of communication services and products.

## Jurisdiction

11.    Jurisdiction is proper under 28 U.S.C. § 1332, as diversity of citizenship exists between CenturyLink and BrightRidge, and the amount in controversy exceeds $75,000.00 exclusive of costs and interests.

12.    Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because BrightRidge resides within this judicial district and is subject to personal jurisdiction therein.

## Background Facts Common to All Claims

13.    On or about July 1, 1980, JCPB-Electric and UIMTC entered into the 1980 Agreement. A true and accurate copy of the 1980 Agreement is attached hereto as Exhibit A.

14.    Over time, there were a total of five amendments to the 1980 Agreement that were executed, all of which were made prior to the formation of BrightRidge in November 2016. The

16

first amendment was entered on or about December 31, 1980, a true and accurate copy of which is attached hereto as Exhibit B. The second amendment was entered on or about December 31, 1982, a true and accurate copy of which is attached hereto as Exhibit C. The third amendment was entered on or about December 21, 1995, a true and accurate copy of which is attached hereto as Exhibit D. The fourth amendment was entered on or about January 6, 2010, a true and accurate copy of which is attached hereto as Exhibit E. The fifth amendment was entered on or about November 11, 2010, a true and accurate copy of which is attached hereto as Exhibit F.

15. CenturyLink, as UIMTC's successor-in-interest, acquired all of UIMTC's rights and obligations under the 1980 Agreement.

16. BrightRidge, as the current owner of all JCPB-Electric's electric supply system assets, asserts that it acquired all of JCPB-Electric's rights and obligations under the 1980 Agreement.

17. JCPB-Electric and UIMTC entered into the 1980 Agreement for the purpose of allowing JCPB-Electric, as the electric supply company in the Electric Service Region, to attach its electric facilities to UIMTC's poles, and to allow UIMTC, as the communication company in the Electric Service Region, to attach its communication facilities to JCPB-Electric's poles. In none of the five amendments to the 1980 Agreement did JCPB-Electric and UIMTC ever change that purpose. In fact, neither at the time of contracting in 1980, nor at the time of contracting for any of the five amendments thereto, did JCPB-Electric or UIMTC ever contemplate that JCPB-Electric would ever be the communication company in the 1980 Agreement, or that UIMTC would ever be the electric supply company in the 1980 Agreement.

17

18. JCPB-Electric was expressly called the "Electric Company" in the 1980 Agreement, whereas UIMTC was expressly called the "Telephone Company" in the 1980 Agreement.

19. Foundational to the 1980 Agreement was JCPB-Electric's and UIMTC's desire to cooperate in accordance with the "Principles and Practices for the Joint Use of Wood Poles by Supply and Communication Companies" as contained in the report of the Joint General Committee of the Edison Electric Institute and the Bell Telephone System dated 1945, and the amendments thereto (the "1945 Report"). A true and accurate copy of the 1945 Report is attached hereto as Exhibit G.

20. Also foundational to the 1980 Agreement was JCPB-Electric's and UIMTC's desire to establish joint use of their respective poles, in the form of pole space rentals, when and where such joint use shall be of mutual advantage.

21. Generally, when one utility (i.e., an electric supply company) contractually rents, for a fee, designated space on the pole of another utility (i.e., a communication company), that pole is considered a joint use pole to the extent that the renter has use of the space rented while the pole owner retains use of the remainder of the pole. So much like any rental of real property, the renter has the right to the portion of the property that it has rented – nothing more and nothing less.

22. In Article I of the 1980 Agreement the space on UIMTC's joint use poles that JCPB-Electric was renting was specifically designated as the uppermost six (6) feet of those poles (hereinafter referred to as the "Electric Company Rental Space"). The Electric Company Rental Space was entirely consistent with JCPB-Electric's business at the time of contracting, as this uppermost space on a utility pole is commonly designated in the electric supply industry as the electric supply space. Accordingly, under the 1980 Agreement the only space on joint use poles

owned by CenturyLink that BrightRidge is entitled to use is the Electric Company Rental Space. Thus, the 1980 Agreement does not apply to any other space on the joint use poles owned by CenturyLink aside from the Electric Company Rental Space.

23. Meanwhile, in Article I of the 1980 Agreement the next four (4) feet of space on the pole after the uppermost 6 feet of space reserved for JCPB-Electric was designated as the Telephone Company Rental Space. The Telephone Company Rental Space was entirely consistent with UIMTC's business at the time of contracting, as this lower space on a utility pole is commonly designated in the communication industry as the communication space.

<u>**Claims**</u>

**FIRST CAUSE OF ACTION**
**(Trespass)**

24. CenturyLink hereby reincorporates and re-alleges counterclaim Paragraphs 1-23 above as if fully set forth herein.

25. Material to this Counterclaim are nearly 10,000 utility poles that CenturyLink owns within the Electric Service Region.

26. BrightRidge has intentionally entered, or otherwise has informed CenturyLink that it intends to enter, onto spaces on those poles that have not been rented to BrightRidge (or any of its predecessors-in-interest), without the authority of CenturyLink to so enter and without the payment of just rents. It being the intent of BrightRidge to possess that space as its own by permanently attaching its own communication facilities thereto.

27. Each such entry and attachment on each of CenturyLink's utility poles is a separate and distinct trespass, with each trespass continuing for as long as each attachment remains in the space not rented by BrightRidge.

28.     BrightRidge has made, and continues to make, the aforementioned entries and attachments in knowing, willful, reckless and/or malicious disregard of CenturyLink's real property ownership rights, and/or contractual rights under the 1980 Agreement.   In fact, BrightRidge has not only knowingly, willfully, recklessly and/or maliciously refused to peacefully acquiesce to CenturyLink's demands to cease and desist from attaching its communication facilities outside of the Electric Company Rental Space on joint use poles owned by CenturyLink, but also refused to remove the attachments already installed.

29.     As a result of BrightRidge's trespasses, the available space on CenturyLink's joint use poles that it has not rented to BrightRidge has been reduced thereby limiting the ability of CenturyLink to use that space for its own communication facilities and/or that of others to whom CenturyLink may from time to time desire to rent the space.  In addition, BrightRidge's trespasses have increased the risks for entangled and disrupted communication facilities, which impacts the quality of services that CenturyLink provides to its customers.  BrightRidge's trespasses have also caused CenturyLink to incur increased maintenance and service costs, while creating safety hazards.

30.     As a direct and proximate result of BrightRidge's trespass, CenturyLink has been injured and seeks damages in an amount to be determined at trial, which at a minimum must include an amount exceeding $75,000.00 that compensates CenturyLink in accordance with market attachment rates for all communication attachments (past, present and future) that BrightRidge has made, or is going to make, outside of the Electric Company Rental Space on CenturyLink's joint use poles from the time of the attachment for so long as the attachment remains.

31.     Because BrightRidge's actions were done knowingly, willfully, maliciously and/or recklessly, CenturyLink is entitled to, and seeks, an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Breach of Contract -- *In the Alternative to the First Cause of Action*)
### (Attachments Outside of the Electric Company Rental Space on CenturyLink's Poles)

32.     CenturyLink hereby reincorporates and re-alleges counterclaim Paragraphs 1-23 above as if fully set forth herein.

33.     To the extent that the 1980 Agreement applies to any attachment by BrightRidge that is made in any space that is outside of the Electric Company Rental Space on joint use poles owned by CenturyLink, then BrightRidge has breached the 1980 Agreement as CenturyLink did not authorize any such attachments and BrightRidge has not paid for them.  Further, BrightRidge has anticipatorily breached the 1980 Agreement on a going forward basis as it has notified CenturyLink that it intends to continue to attach facilities in spaces that are outside of that Electric Company Rental Space.

34.     BrightRidge's actions have also breached the duty of good faith and fair dealing implied in law into every contract, which necessarily includes the 1980 Agreement.

35.     Each such entry and attachment on each of CenturyLink's utility poles is a separate and distinct breach, with each breach continuing for as long as each attachment remains in the space not rented by BrightRidge.

36.     As a result of BrightRidge's breaches, the available space on CenturyLink's joint use poles that it has not rented to BrightRidge has been reduced thereby limiting the ability of CenturyLink to use that space for its own communication facilities and/or that of others to whom CenturyLink may from time to time desire to rent the space.  In addition, BrightRidge's breaches have increased the risks for entangled and disrupted communication facilities, which impacts the

quality of services that CenturyLink provides to its customers. BrightRidge's breaches have also caused CenturyLink to incur increased maintenance and service costs, while creating safety hazards.

37. As a direct and proximate result of BrightRidge's breaches, CenturyLink has been injured and seeks damages in an amount to be determined at trial, which at a minimum must include an amount exceeding $75,000.00 that compensates CenturyLink in accordance with all market attachment rates for all communication attachments (past, present and future) that BrightRidge has made, or is going to make, outside of the Electric Company Rental Space on CenturyLink's joint use poles from the time of the attachment for so long as the attachment remains; as well as all fees, penalties and rents justly due under the 1980 Agreement, as amended.

38. CenturyLink is also entitled to recover all of its expenses incurred in connection with BrightRidge's breaches, which amount is comprised of all costs, attorneys' fees, disbursements and other proper charges and expenditures in accordance with Article XV(F) of the 1980 Agreement.

39. CenturyLink also seeks injunctive relief that prevents BrightRidge from making any additional attachments that are outside of the Electric Company Rental Space on CenturyLink's poles, unless otherwise authorized by CenturyLink.

**THIRD CAUSE OF ACTION**
**(Conversion --** *In the Alternative to the First Cause of Action*)[2]

40. CenturyLink hereby reincorporates and re-alleges counterclaim Paragraphs 1-23 above as if fully set forth herein.

---

[2] CenturyLink believes that Tennessee courts would find utility poles to be real property, consistent, for instance, with the Tennessee Tax Code. However, at least some courts in other jurisdictions have found utility poles to be personal property. Accordingly, the Third Cause of Action is pled in the alternative. That is, if utility poles are real property, then the First Cause of Action for trespass is applicable; whereas if utility poles are personal property, than the Third Cause of Action for Conversion is applicable.

41.     By making and maintaining hundreds of communication attachments to CenturyLink's utility poles without proper authorization and without paying rents, BrightRidge took unlawful possession of CenturyLink's property and exercised dominion and/or control over CenturyLink's property inconsistent with CenturyLink's ownership rights to that property, and continues to do so, for each year for which full compensation is not paid.

42.     Each such attachment on each of CenturyLink's utility poles is a separate and distinct act of conversion, with each conversion continuing for as long as each attachment remains in the space not rented by BrightRidge.

43.     BrightRidge has made, and continues to make, the aforementioned attachments in knowing, willful, reckless and/or malicious disregard of CenturyLink's property ownership rights, and/or contractual rights under the 1980 Agreement.  In fact, BrightRidge has not only knowingly, willfully, recklessly and/or maliciously refused to peacefully acquiesce to CenturyLink's demands to cease and desist from attaching its communication facilities outside of the Electric Company Rental Space on joint use poles owned by CenturyLink, but also refused to remove the attachments already installed.

44.     As a result of BrightRidge's conversion, the available space on CenturyLink's joint use poles that it has not rented to BrightRidge has been reduced thereby limiting the ability of CenturyLink to use that space for its own communication facilities and/or that of others to whom CenturyLink may from time to time desire to rent the space.  In addition, BrightRidge's conversion has increased the risks for entangled and disrupted communication facilities, which impacts the quality of services that CenturyLink provides to its customers.  BrightRidge's conversion has also caused CenturyLink to incur increased maintenance and service costs, while creating safety hazards.

45.     As a direct and proximate result of BrightRidge's conversion, CenturyLink has been injured and seeks damages in an amount to be determined at trial, which at a minimum must include an amount exceeding $75,000.00 that compensates CenturyLink in accordance with market attachment rates for all communication attachments (past, present and future) that BrightRidge has made, or is going to make, outside of the Electric Company Rental Space on CenturyLink's joint use poles from the time of the attachment for so long as the attachment remains.

46.     Because BrightRidge's actions were done knowingly, willfully, maliciously and/or recklessly, CenturyLink is entitled to, and seeks, an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**(Unjust Enrichment)**

40.     CenturyLink hereby reincorporates and re-alleges counterclaim Paragraphs 1-23 above as if fully set forth herein.

41.     BrightRidge has failed to pay, and intends to continue to not pay to, CenturyLink any rents for BrightRidge's attachments of facilities that are outside the Electric Company Rental Space on joint use poles owned by CenturyLink. Because of these failures, BrightRidge has received, and continues to receive, unfair benefits.

42.     As a result of BrightRidge's conduct described above, BrightRidge has been and will continue to be unjustly enriched at the expense of CenturyLink, and BrightRidge should be required to disgorge this unjust enrichment and/or to compensate CenturyLink for the benefits conferred, which at a minimum must include an amount exceeding $75,000.00 that compensates CenturyLink in accordance with all market attachment rates for all attachments (past, present and future) that BrightRidge has made, or is going to make, outside of the Electric Company Rental

Space on CenturyLink's joint use poles from the time of the attachment for so long as the attachment remains.

**WHEREFORE**, for the foregoing reasons and other good cause, CenturyLink prays the Court for the following relief:

A.      That the Court dismiss BrightRidge's Complaint with prejudice and order that BrightRidge receive nothing from CenturyLink;

B.      That the Court realign the parties so that the natural plaintiff CenturyLink be identified as the party-plaintiff, and the putative tortfeasor and contract breacher, BrightRidge, be identified as the party-defendant;

C.      That the Court enter judgment in favor of CenturyLink on the claims set forth in CenturyLink's Counterclaims, together with interest at the highest legal rate until paid in full;

D.      That the Court award CenturyLink compensatory damages in an amount, which at a minimum must include:

(1)      An amount exceeding $75,000.00 that compensates CenturyLink in accordance with all market attachment rates for all attachments (past, present and future) that BrightRidge has made, or is going to make, outside of the Electric Company Rental Space on CenturyLink's joint use poles from the time of the attachment for so long as the attachment remains; and if applicable, all fees, penalties and rents justly due under the 1980 Agreement, as amended;

(2)      An amount that reimburses CenturyLink for all of its expenses incurred in connection with BrightRidge's breaches, which amount is comprised of all

costs, attorneys' fees, disbursements and other proper charges and expenditures in accordance with Article XV(F) of the 1980 Agreement.

E.   That the Court tax BrightRidge with all costs of this action, including but not necessarily limited to court costs and discretionary costs.

F.   That the Court grant punitive damages on CenturyLink's tort claims in an amount of at least $750,000.00; and

G.   That the Court grant CenturyLink such other relief as the Court deems just and appropriate.

DATED this 11th day of March 2020.

Respectfully submitted,

**UNITED TELEPHONE SOUTHEAST, LLC,
d/b/a CENTURYLINK UTS**

s/ Misty Smith Kelley
Misty Smith Kelley, Esq. (TN Bar No. 19450)
Emma L. Marion, Esq. (TN Bar No. 37689)
BAKER, DONELSON, BEARMAN
CALDWELL & BERKOWITZ, P.C.
633 Chestnut Street, Suite 1900
Chattanooga, Tennessee 37450
423-209-4148 (phone)
423-756-3447 (fax)
mkelley@bakerdonelson.com
emarion@bakerdonelson.com
              and
Gary L. Edwards, Esq. (TN Bar No. 20058)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
100 Med Tech Parkway, Suite 200
P.O. Box 3038
Johnson City, TN  37602
(423) 928-0181 (phone)
(423) 928-5694 (fax)
gedwards@bakerdonelson.com

*Counsel for United Telephone Southeast, LLC,*

*d/b/a CenturyLink UTS*

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 11, 2020, a copy of the foregoing document was served on the following counsel of record via electronic mail and/or U.S. postal mail, postage prepaid:

> William C. Bovender, Esq.
> Stephen M. Darden, Esq.
> Joseph B. Harvey, Esq.
> HUNTER, SMITH & DAVIS, LLP
> 1212 N. Eastman Road
> P.O. Box 3740
> Kingsport, TN 37664
> bovender@hsdlaw.com
> sdarden@hsdlaw.com
> jharvey@hsdlaw.com

>       s/ Gary L. Edwards____
>       Gary L. Edwards, Esq.

27