EXHIBIT E

## AMENDMENT NO. FOUR

This Amendment No. Four ("Amendment") is entered into as of the "Effective Date" (as defined in Paragraph 18) by and between United Telephone Southeast, LLC d/b/a CenturyLink, successor-in-interest to United Telephone Southeast, Inc. ("Telephone Company") and Johnson City Power Board ("Electric Company"). Telephone Company and Electric Company may sometimes be referred to in this Amendment individually as a "party" or collectively as the "parties."

### RECITALS

WHEREAS, Telephone Company and Electric Company entered into that certain Agreement dated July 1, 1980 regarding the joint use of poles, as amended by that certain Amendment dated December 31, 1980 that certain Amendment No. Two dated December 31, 1982 and that certain Amendment No. Three dated December 21, 1995 (collectively, "Agreement"); and

WHEREAS, Telephone Company and Electric Company desire to amend the Agreement upon the terms and conditions set forth in this Amendment.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are acknowledged by the parties, Telephone Company and Electric Company amend the Agreement as follows:

1. **ARTICLE I, SECTION B**: Article I, Section B is amended to read as follows:

"B. NORMAL JOINT USE POLE – means a pole which meets the requirements of the National Electrical Safety Code for support and clearance of supply and communication conductors under conditions existing at the time joint use is established, or is created under known plans of either party. Specifically, a normal joint pole under this Agreement shall be a forty (40) foot pole, which, if same be a wood pole, shall be a class 4 wood pole of an agreeable treatment."

The foregoing definition of "a normal joint use pole" is not intended to preclude the use of joint poles shorter or longer or of more or less strength than the normal joint pole in locations where such poles will meet the known or anticipated requirements of the parties hereto. Also, said definition shall apply to non-wood poles as well as wood poles.

Notwithstanding the foregoing, Telephone Company shall not be required to pay for the additional costs arising from the Owner's replacement of normal joint use poles with poles of a composition more expensive than that of the pole being replaced ("Like for Like Cost Provision"). For example, replacement by the Owner of a wood pole with a steel pole would cause any reimbursement to the Owner to be based upon the cost of a comparably sized wood pole."

2. **ARTICLE I, SECTION G**: The following definition is added immediately after ARTICLE 1, SECTION F:

"G. Service Drops: The wire connecting the distribution component of Licensee's facilities and engagement of Licensee's individual customers."

3. **ARTICLE II**: The word "wooden" in the first sentence of ARTICLE II is deleted in its entirety.

4. **ARTICLE IV**: ARTICLE IV is deleted in its entirety and replaced with the following:

"SPECIFICATIONS: Attachments to joint use poles covered by this Agreement shall at all times be, at a minimum, in conformity with the terms and provisions of the NESC in effect as of the time the Attachment is made, or as may be agreed upon and approved in writing by the designated representatives of the Electric Company and Telephone Company. The National Electric Code and the National Electrical Safety Code and such revisions and amendments to same as may hereafter be made are to be used as guides in the administration of the Agreement."

5. **ARTICLE V, SECTION A**: The third sentence of ARTICLE V, SECTION A, which commences "However, no guarantee ..." is deleted thereafter and the following is inserted in its place:

"However, no guarantee is given by the Owner of permission from property owners, municipalities or others for the use of poles by the Licensee; and, if objection is made thereto, Licensee shall have thirty (30) days within which to remedy the objection. If Licensee is unable to remedy said objection within thirty (30) days, Licensee shall give Owner written notice of same, and, thereafter, Owner shall grant Licensee additional reasonable time within which to remedy the objection, such additional reasonable time not to exceed ninety (90) days (unless otherwise agreed to by the Parties), the Owner may, upon thirty (30) days prior written notice to Licensee, require the Licensee to remove its attachments from the poles involved, and Licensee shall, within thirty (30) days of receipt of said notice, remove its attachments from said poles at its sole expense.

However, should Licensee resort to litigation or appeal to remedy the objection within the initial 30 day time frame or the additional reasonable time granted, and provided Licensee is diligently pursuing such litigation or appeal, Licensee may continue to keep and maintain its relevant attachments, and in doing so, subject to applicable law, Licensee will indemnify Owner from and against all claims, suits, liens, actions, damages, penalties, assessments, fines, losses liabilities, costs, fees (including reasonable attorneys' fees) and expenses resulting from Licensee's continuing to keep and maintain such

Case 2:20-cv-00030-KAC-CRW   Document 7-5   Filed 03/11/20   Page 2 of 9   PageID #: 144

relevant attachments. If the litigation or appeal is not resolved within one year of Licensee's receipt of the objection, Licensee must immediately remove its attachments.

Should Licensee fail to remove its attachments as herein provided, the Owner may remove them at Licensee's expense, without any liability whatsoever for such removal or the manner of making it, for which expense Licensee shall reimburse the Owner on demand."

6. **ARTICLE V, SECTION C**: The following language is added to ARTICLE V, SECTION C:

"Each party will be responsible for determining the need for and installation of adequate guy rods for its facilities. Joint use of anchor rods will only be permissible when Licensee makes a written request and permission is granted by Owner."

7. **ARTICLE VI, SECTION A:**

The last sentence of ARTICLE VI, SECTION A is deleted in its entirety and replaced with the following:

"Service Drops can be placed in accordance with the specifications without prior notice or application for attachment. However, within ten (10) business days of the first of each month, the Telephone Company will provide a report in writing (or electronically) to the Electric Company of each Service Drop which it made in the preceding month. Said report shall comply with all attachment application requirements, including payments. Emergency construction can be placed upon verbal notice at the numbers listed in Article XVII herein."

The following language is added to ARTICLE VI, SECTION A:

"Application Fees:

1. Fifteen Dollars ($15.00) per pole application fee;
2. If the application requests up to ten (10) poles in the same general locality, the fee for up to ten (10) poles will be limited to Sixty Dollars ($60.00)
3. However, if poles not in the same general locality are involved, then the Fifteen Dollars ($15.00) per pole attachment fee would apply without discount.
4. For Service Drops, a ($15.00) per pole fee would be paid, based upon monthly notification of these Attachments.

8. **ARTICLE VI, SECTION B**: The following language is added to ARTICLE VI, SECTION B:

"It is agreed that the party receiving a request from the other to make a transfer, shall complete same within sixty (60) calendar days; and, if said transfer is not completed within said (60) day period the party requesting the transfer can make the transfer itself and the party which failed to make the transfer will reimburse the other the higher of its actual costs for making said transfer or Two Hundred Fifty Dollars ($250) per transfer."

9. **ARTICLE VII, SECTION A:** The following language is added to ARTICLE VII, SECTION A:

"However, payment amounts shall be subject to the Like For Like Cost Provision referenced in Article I, Section B."

10. **ARTICLE VII, SECTION B:** The language in ARTICLE VII, SECTION B stating "(except in cases of emergency when verbal notice will be given, and subsequently confirmed in writing)" will be replaced with:

"(except in cases of emergency when verbal notice will be given through the emergency phone number(s) provided in Article XVII.)"

ARTICLE VII, SECTION B will otherwise remain unchanged except the following language will be deleted:

"In the case of a pole along subdivided property which is not set opposite a lot line, the owner of such pole will, if conditions require, move same at the request of the Licensee, each party bearing the cost of moving its facilities."

11. **ARTICLE VII, SECTION C:** The language in ARTICLE VII, SECTION C stating "(shorter notice, including verbal notice subsequently confirmed in writing, may be given in cases of emergency)" will be replaced with:

"(except in cases of emergency when verbal notice will be given through the emergency phone number(s) provided in Article XVII.)"

12. **ARTICLE VII, SECTION G:** ARTICLE VII, SECTION G is deleted in its entirety and the following is substituted:

"G. When replacing a jointly used pole carrying aerial cable terminals, underground connections, or transformer equipment, the Owner shall make a good faith effort to set the pole at a location mutually desirable to the Parties."

4

13. **ARTICLE VII, SECTION J:** A new ARTICLE VII, SECTION J will be added to read as follows:

"J. Should either party request the replacement of any existing pole owned by the other party, the party making the request agrees to pay the total cost to replace the pole, including any un-depreciated value of the pole replaced. However, payment amounts shall be subject to the Like For Like Cost Provision referenced in Article I, Section B."

14. **ARTICLE VII, SECTION K:** A new ARTICLE VII, SECTION K will be added to read as follows:

"K. Each party agrees to respond to emergency situations (i.e. car wreck, fallen trees, etc.) within ninety (90) minutes of notification. The non-responding party agrees to allow the other party to take corrective action as it deems necessary if the non-responding party fails to respond within the ninety (90) minute response period. In the event the responding party is not qualified or required to take any corrective action, said responding party shall be compensated by the non-responding party for all actual costs incurred by the responding party after ninety (90) minutes until the non-responding party or other third parties arrive on the scene and allow the responding party to leave. The non-responding party will bear all costs of corrective actions and, subject to applicable law, bear all liability associated with conducting corrective actions and hold harmless, defend and indemnify the responsible party for any claims, liabilities, costs, damages, suits, fees (including reasonable attorneys' fees) arising out of the responding party conducting the corrective action. Any corrective actions taken by the responding party shall be actions said party is qualified to take."

15. **ARTICLE VIII, SECTION A:** ARTICLE VIII, SECTION A, is deleted in its entirety and the following is substituted:

"A. Owner shall, at its own expense, maintain its joint poles in a safe and serviceable condition, and in accordance with ARTICLE IV of this Agreement and the requirements of the National Electrical Safety Code, and shall replace, subject to ARTICLE VII, such of said poles that become defective."

16. **ARTICLE XII, SECTION C:** ARTICLE XII, SECTION C, shall be amended as follows: The words "ten (10) days" and "five (5) days" are replaced with the words "thirty (30) days."

17. **ARTICLE XII, SECTION E:** A new ARTICLE XII, SECTION E will be added to read as follows:

"E. Any party responsible for making a future (after April 15, 2010) unauthorized attachment will, when said future unauthorized attachment is discovered, be required to

5

make application for said attachment within seven (7) calendar days of notice being provided to it of said unauthorized attachment, and pay the application fee. The responsible party will also pay a penalty for each such attachment in the amount of seventy-five dollars ($75.00) per unauthorized attachment. Further, if the application is not submitted and the application fee and penalty not paid within thirty (30) calendar days of receipt of notice of the unauthorized attachment, an additional penalty of twenty five dollars ($25.00) per day will be paid by the responsible party. Also, the responsible party will remit, in addition to the application fee and penalty, annual pole rental on said unauthorized attachment retroactive to the last joint use pole inventory."

18.  **ARTICLE XVII**: ARTICLE XVII is deleted in its entirety and the following substituted therefor:

" POINTS OF CONTACT AND NOTICE

The points of contact listed in this Article XVII ("Points of Contract") will serve as the respective Electric Company and Telephone Company representatives responsible for addressing and handling all operational issues regarding this Agreement. Except for any notice done pursuant to the NJUNS system (which will require notice to be delivered and deemed effective as is customary under that system), and except for any emergency notice as set forth below, whenever any notice, consent, approval, request, document, demand, authorization or notice of default is required or permitted under this Agreement (collectively, "Notice"), the Notice must be in writing (except for oral notice specifically allowed under this Agreement, if any). All Notice must be delivered in person, by United States certified mail, return receipt-requested, postage prepaid or by a nationally recognized overnight courier service to the Points of Contact at the following addresses:

For Embarq:
Andy Ice, Manager of Engineering
101 N. Roan St.
Johnson City, TN 37601
(423) 461-7724
Andrew.F.Ice@centurylink.com

Wayne Hall, Joint Use Manager
14111 Capital Blvd.
Wake Forest, NC 27587
(919) 554-5251
Joe.Lamm@centurylink.com

Wayne Helm, Director of Engineering
717 McGilvary St.
Fayetteville, NC 28301
(910) 323-9052
Wayne.Helm@centurylink.com

6

In addition, copies of all default Notice must be delivered to the parties at the following addresses:

If default Notice to Electric Company:

>Johnson City Power Board
>P.O. Box 1636
>Johnson City, Tennessee 37605-1636
>Attention: Mr. Home G'Fellers, General Manager
>(423) 952-5040
>hdg@jcpb.com

With a copy of such Telephone Company default Notice only (which will not constitute Notice to Telephone Company) to:

>CenturyLink Law Department
>100 CenturyLink Drive
>Monroe, LA 71203

For Electric Company:
>Johnson City Power Board
>2600 Boones Creek Road
>Johnson City, Tennessee 37615
>Attention: Mr. Mark Eades, Chief Operating Officer
>(423) 952-5028
>meads@jcpb.com

If Notice is given by personal delivery, a receipt indicating that personal delivery was made must be obtained. Notice will be deemed effective on the date of receipt by the addressee as shown on the receipt if given by personal delivery, on the return receipt if Notice is given by certified mail or the confirmation of delivery form if Notice is given by overnight courier service. Rejection or refusal to accept Notice or the inability to deliver Notice because of a changed address which no Notice was given will be deemed to be receipt of the Notice as of the date of rejection, refusal or inability to deliver. Either party may change its address and contact information in this Article XVII by giving Notice of such change to the other party in the manner for giving Notice prescribed above."

For emergency situations requiring verbal notice to Telephone Company under this Agreement, Electric Company shall give verbal notice to Telephone Company by calling Telephone Company using the following phone number: 866-797-0944.

For emergency situations requiring verbal notice to Electric Company under this Agreement, Telephone Company shall give verbal notice to Electric Company by calling Electric Company using the following phone number: 423-952-5000.

7

19. Except as amended in this Amendment, the terms and conditions of the Agreement remain in full force and effect. In the case of a conflict between the terms and conditions of this Amendment and those of the Agreement, the terms and conditions of this Amendment will control.

20. This Amendment is effective on the date this Amendment is last signed by both Electric Company and Telephone Company where indicated below ("Effective Date").

21. This Amendment may be signed in several counterparts, each of which will be fully effective as an original and all of which together will constitute one and the same instrument. Signatures to this Amendment transmitted by facsimile or electronic mail will be deemed the equivalent of delivery of an original signature, provided that the party delivering its signature by facsimile or electronic mail promptly thereafter delivers this Amendment with the original signature to the other party.

End of document signatures on next page

8

Case 2:20-cv-00030-KAC-CRW   Document 7-5   Filed 03/11/20   Page 8 of 9   PageID #: 150

UNITED TELEPHONE SOUTHEAST LLC d/b/a CenturyLink

By: *[signature]*
Name: Wayne Mathisen
Title: Real Estate
Date: 12/08/2009



Johnson City Power Board

By: *Homer D. O'Fellers*
Name: *Homer D. O'Fellers*
Title: *President & CEO*
Date: *11/6/pt 10*