**From:** Chong, Andrew L
**Sent:** Friday, August 31, 2018 10:15 AM
**To:** Ice, Andy F
**Subject:** RE: Attachments by Power Company

I will review with Ryan and my peers. I will also get the contract negotiation team engaged.

---

From: Ice, Andy F
Sent: Friday, August 31, 2018 9:43 AM
To: Chong, Andrew L <Andrew.L.Chong@centurylink.com>
Subject: RE: Attachments by Power Company

Andrew,

Sorry I may have been a little confusing with my question. I was not asking the question on when the power company owned the pole. I was referring to the poles that we own that are joint use poles. I heard them say that there were 300+ poles that we own that they said they were going to attach their new fiber to in the communications zone in this first phase.

They stated that according to Article VI section B that they could force us to move our attachments that are on Brightridge poles at our own expense, but then they said they were not going to pursue that option. Article V1 section B essentially states "each party shall place, maintain, rearrange, transfer and remove its own attachments" I think this is a "peace offering" and has no bearing on the issue because the entire premise of the joint use pole is based on the original definitions under Article 1 of our agreement. The definition in Article 1 section A states: Normal Space ....... This space is specifically defined as follows:
1) For the Electric Company – the uppermost six (6) feet;
2) For the Telephone Company – a space of four (4) feet at sufficient distance below the space of the Electric Company to provide at all time the minimum clearance required by the specification referred to in Article IV ( which is the article referring to the NESC, the Edison Electric Institute and the Bell Telephone System) and at sufficient height above the ground to provide proper vertical clearance for the lowest horizontally run line wires or cables attached in such space.

So really this Joint Use agreement is with BrightRidge as an Electric company, and not as a communications company. So does this existing agreement even hold water? They are now coming down into the communications zone and it seems we should have some other wording in the contract to address this.

They stated they expected to have make-ready work on about 100 of these 300 poles that we own (using a 30% average on historical make-ready work), but they are claiming that since they are still under the BrightRidge name they do not have to pay an attachment fee to attach down in the communications zone. This does not seem quite right as they are now attaching in the communications zone just like a cable TV company and squeezing the communications zone even more than it is already squeezed. Since they are entering into a new business with new attachments should there be some attachment fees for this? What have we done in other areas where power companies began attaching down in the communications zone? Should we have our legal team review this to determine if we should modify our language on the contract to indicate that attaching down in the communications zone requiring new attachment fees?

Once we start getting into repair work or breakdowns having them in both the power zone and the communications zone is going to take double record keeping for us to know that they are in the communications as well as the power zone on certain poles when we ask them to transfer their lines to the new poles. They will have to send out the power



1

CL00487

truck to transfer the power lines and if they are not at the top of the communications zone with their communications fiber then they will have to wait until the party above them transfers their cable before they can transfer their communications cable to the new pole. So they will have to make a re-trip to take care of this after the other party moves.. If we do not know they are on the pole in both zones how are we going to know how to set up the NJUNS or Notify tickets on the Next To Go on the transfer work? This transfer work always follows the topmost attacher down to the lowest attacher, so if we do not have records that they are in the communication zone we cannot set up the transfer work correctly. Should we get paid our attachment fees to cover this?

We track the attachments to our company owned poles by the attachment requests and fees that we are sent so we know who is on each pole. Seems like we should get something to pay for our record keeping and updates. If not a normal yearly attachment fee then there ought to be at least a one-time application fee (currently $15 in the existing contract) for attaching down into the communications zone?

Andy

---

From: Chong, Andrew L
Sent: Friday, August 31, 2018 7:35 AM
To: Ice, Andy F <Andrew.F.Ice@centurylink.com>
Subject: RE: Attachments by Power Company

Andy,

Of the top I would say they are correct. I will look at the agreement for details They are the pole owner and have the right to attach at any point as long as it does not create a NESC violation. There may be a communication zone but we don't have control of it. When we attach we are basically renting the 6" above and below the attachment point.

I will run the question by my more experienced peers to get their take.

Andrew

---

From: Ice, Andy F
Sent: Thursday, August 30, 2018 6:27 PM
To: Chong, Andrew L <Andrew.L.Chong@centurylink.com>
Subject: Attachments by Power Company

Andrew,

I had a question about the meeting we had with BrightRidge yesterday. When Jeff Honeycutt asked the question about attachment fees and if they would be paying for an attachment, the reply that came from Stacy Evans was that "No, we are not a separate entity so we would not be paying for an attachment". My question is this. Our current agreement with BrightRidge is about joint use poles, and with BrightRidge being the Power Company and in their power zone on the pole and CenturyLink being the communications provider and being in the communications zone we did not have conflicts. Now that BrightRidge is moving down into the communications zone should there be a fee that we charge for these new attachments in the communications zone?

I realize you may not know this answer off the top of your head so let me know your thoughts after you review this with your team.

Andy

| | |
|---|---|
| **Subject:** | Attachments by Power Company |
| **Location:** | Skype Meeting |
| **Start:** | Tue 9/18/2018 10:00 AM |
| **End:** | Tue 9/18/2018 11:00 AM |
| **Show Time As:** | Tentative |
| **Recurrence:** | (none) |
| **Meeting Status:** | Not yet responded |
| **Organizer:** | Chong, Andrew L |
| **Required Attendees:** | Ice, Andy F; Sikes, J Ryan R; Freeman, Josh |
| **Optional Attendees:** | Reynolds, Nicholas; Harms, Rick J; Lotz, Christopher; Peat, Donald P; Honeycutt, Jeff J |

Gentlemen,

Let us reconvene to discuss the response from Stacy. Hopefully Florence will be kind and things will be back to normal by Tuesday, if not I will reschedule.

Thanks

Andrew


Ryan & Josh,

Please see questions posed by Andy.

@ JU managers if you have had this situation before please share the solution.

Thanks,

Andrew

→ Join Skype Meeting

Trouble Joining? Try Skype Web App

Join by phone

United States : 800 594-5900,,23808183# (North America)     English (United States)

Find a local number

Conference ID: 23808183
Forgot your dial-In PIN? | Help

1

CL00489

From: Ice, Andy F
Sent: Friday, August 31, 2018 9:43 AM
To: Chong, Andrew L <Andrew.L.Chong@centurylink.com>
Subject: RE: Attachments by Power Company

Andrew,

Sorry I may have been a little confusing with my question. I was not asking the question on when the power company owned the pole. I was referring to the poles that we own that are joint use poles. I heard them say that there were 300+ poles that we own that they said they were going to attach their new fiber to in the communications zone in this first phase.

They stated that according to Article VI section B that they could force us to move our attachments that are on Brightridge poles at our own expense, but then they said they were not going to pursue that option. Article V1 section B essentially states "each party shall place, maintain, rearrange, transfer and remove its own attachments" I think this is a "peace offering" and has no bearing on the issue because the entire premise of the joint use pole is based on the original definitions under Article 1 of our agreement. The definition in Article 1 section A states: Normal Space ....... This space is specifically defined as follows:
1) For the Electric Company – the uppermost six (6) feet;
2) For the Telephone Company – a space of four (4) feet at sufficient distance below the space of the Electric Company to provide at all time the minimum clearance required by the specification referred to in Article IV ( which is the article referring to the NESC, the Edison Electric Institute and the Bell Telephone System) and at sufficient height above the ground to provide proper vertical clearance for the lowest horizontally run line wires or cables attached in such space.

So really this Joint Use agreement is with BrightRidge as an Electric company, and not as a communications company. So does this existing agreement even hold water? They are now coming down into the communications zone and it seems we should have some other wording in the contract to address this.

They stated they expected to have make-ready work on about 100 of these 300 poles that we own (using a 30% average on historical make-ready work), but they are claiming that since they are still under the BrightRidge name they do not have to pay an attachment fee to attach down in the communications zone. This does not seem quite right as they are now attaching in the communications zone just like a cable TV company and squeezing the communications zone even more than it is already squeezed. <u>Since they are entering into a new business with new attachments should there be some attachment fees for this</u>? What have we done in other areas where power companies began attaching down in the communications zone? Should we have our legal team review this to determine if we should modify our language on the contract to indicate that attaching down in the communications zone requiring new attachment fees?

Once we start getting into repair work or breakdowns having them in both the power zone and the communications zone is going to take double record keeping for us to know that they are in the communications as well as the power zone on certain poles when we ask them to transfer their lines to the new poles. They will have to send out the power truck to transfer the power lines and if they are not at the top of the communications zone with their communications fiber then they will have to wait until the party above them transfers their cable before they can transfer their communications cable to the new pole. So they will have to make a re-trip to take care of this after the other party moves.. If we do not know they are on the pole in both zones how are we going to know how to set up the NJUNS or Notify tickets on the Next To Go on the transfer work? This transfer work always follows the topmost attacher down to the lowest attacher, so if we do not have records that they are in the communication zone we cannot set up the transfer work correctly. Should we get paid our attachment fees to cover this?

We track the attachments to our company owned poles by the attachment requests and fees that we are sent so we know who is on each pole. Seems like we should get something to pay for our record keeping and updates. If not a

2

CL00490

normal yearly attachment fee then there ought to be at least a one-time application fee (currently $15 in the existing contract) for attaching down into the communications zone?

Andy

Donnie response
For your meeting on the power fiber. A few thing to think about.
Las Vegas, Nevada Power (NVE) Ran fiber to their substations under the name Sierra Pacific. Because it was a NVE company the fiber was placed in the power zone. Later the fiber was sold today it belongs to Zayo. All the fiber was moved from the power space to the comm space.
Oregon, Tom went to court. The power company placed a fiber below the power space. The argument is now where does the comm space start. I believe if the power company owns the fiber it needs to be installed in their space. If we own the pole. Most joint use agreements have space allotment. Having the fiber in the comm space allows a comm worker to work on it. If it is in the power space it requires a power guy. Having the fiber in the comm space tells me they may be looking to rent it out. This would allow comm companies to work on it.

---

From: Chong, Andrew L
Sent: Friday, August 31, 2018 7:35 AM
To: Ice, Andy F <Andrew.F.Ice@centurylink.com>
Subject: RE: Attachments by Power Company

Andy,

Of the top I would say they are correct. I will look at the agreement for details They are the pole owner and have the right to attach at any point as long as it does not create a NESC violation. There may be a communication zone but we don't have control of it. When we attach we are basically renting the 6" above and below the attachment point.

I will run the question by my more experienced peers to get their take.

Andrew

---

From: Ice, Andy F
Sent: Thursday, August 30, 2018 6:27 PM
To: Chong, Andrew L <Andrew.L.Chong@centurylink.com>
Subject: Attachments by Power Company

Andrew,

I had a question about the meeting we had with BrightRidge yesterday. When Jeff Honeycutt asked the question about attachment fees and if they would be paying for an attachment, the reply that came from Stacy Evans was that "No, we are not a separate entity so we would not be paying for an attachment". My question is this. Our current agreement with BrightRidge is about joint use poles, and with BrightRidge being the Power Company and in their power zone on the pole and CenturyLink being the communications provider and being in the communications zone we did not have conflicts. Now that BrightRidge is moving down into the communications zone should there be a fee that we charge for these new attachments in the communications zone?

I realize you may not know this answer off the top of your head so let me know your thoughts after you review this with your team.

Andy

3

CL00491

Case 2:20-cv-00030-KAC-CRW   Document 77-6   Filed 03/01/23   Page 5 of 10   PageID #: 1920

 

## 2018-08-29 Joint-use pole make-ready discussions between CenturyLink and BrightRidge

1. Based on **contractual language** from the "1980 Agreement Article VI, Section B; and Amendment 4" with CenturyLink, BrightRidge can require CenturyLink to "move" or "rearrange" their attachments on BrightRidge poles at the expense of CenturyLink.
    a. BrightRidge does not plan to pursue this option but would rather opt for a cooperative and mutually beneficial relationship between the two organizations.

2. **On CenturyLink owned poles**, BrightRidge expects to pay for the Engineering assessment and associated Make-ready work for new attachments. BrightRidge prefers to utilize a single contractor (mutually agreed upon by all parties) to perform all Make-Ready work (including rearranging attachments for other parties).
    a. BrightRidge will assume the Engineering assessment and Make-Ready costs associated with the CenturyLink poles, with which BrightRidge desires to attach fiber optic cabling.
    b. Should pole replacements be required due to existing code violations, it was agreed that the costs would be shared equally among all companies with attachments at that specific location.

3. On **BrightRidge owned poles**, BrightRidge will perform the Engineering assessments and will utilize a common contractor (mutually agreed upon by all parties) to perform the Make-Ready work (including rearranging attachments for other parties). Utilizing a common contractor benefits both parties as it avoids duplication of work and minimizes costs.
    a. BrightRidge will assume the Engineering assessment and Make-Ready costs associated with the CenturyLink attachments.
    b. Should pole replacements be required due to existing code violations, it was agreed that the costs would be shared equally among all companies with attachments at that specific location.
    c. BrightRidge is not willing to pay for CenturyLink to perform their own Engineering assessment for poles owned by BrightRidge. BrightRidge will ensure that the engineering requirements meet the standards required by CenturyLink. The common contractor (Star Communication proposed) can double check the height of CL lines when they do the make-ready work. CenturyLink confirmed that TN law requires 18 ft of clearance from the swag over state highways and 15.5 ft on secondary roads/driveways. BrightRidge will attempt to keep 18 ft of clearance on all road crossings but reserves the fall back to 15.5 ft where not feasible.
    d. BrightRidge plans to identify which poles requiring Make-Ready work also have existing attachment Code-violations. These will be identified to CenturyLink. If the BrightRidge make-ready work addresses the CL code violations, we will not charge CL for the original violation.

4. Other Items:
    a. BrightRidge is currently performing make-ready assessments for the phase 1 fiber construction and Intellirupter projects, which will continue for multiple months.
    b. BrightRidge expects to start on some sections of the make-ready work by the end of September 2018.
    c. The terms of the existing Joint pole use agreement will be utilized by BrightRidge for the additional fiber optic attachments. Where BrightRidge has existing electrical/fiber attachments, we do not expect a new attachment charge to be associated.

CL00492

| From: | Stacy Evans |
|---|---|
| Sent: | Wednesday, September 12, 2018 11:05 AM |
| To: | Chong, Andrew L; Ice, Andy F; Honeycutt, Jeff J |
| Cc: | David Addington; Ken Edgar; Rodney Metcalf; Mark Eades; Sikes, J Ryan R |
| Subject: | RE: Notes from the follow up meeting for the Joint-Use Make-ready discussions [CenturyLink / BrightRidge] |

Andrew,

Sorry for the delayed response but we had to wait on our legal team to provide information regarding notices to our vendors about the name change to BrightRidge.

We will submit a letter of notification to CenturyLink in the next few days. Here is a link that summarizes our name change: https://www.brightridge.com/about/history/
As indicated from the website, we have a charter as "Johnson City Energy Authority" DBA BrightRidge. Our legal team assures us that the Joint Pole use agreement can be assumed and the name change is not a factor. This would be handled in a similarly way to the United Telephone, Sprint, Embarq, and CenturyLink name changes in the past.

Here is our response to your question regarding a possible need for a separate pole usage/attachment agreement with the BrightRidge Broadband group. BrightRidge is a single organization that provides both Electrical distribution and Broadband services to it's customers. Any use of the term division in relation to the Broadband launch is in reference to the internal financial accounting system tracking. BrightRidge has an existing agreement with CenturyLink for Joint pole use, which we expect to cover both the electrical and fiber optic attachments. As a case in point, BrightRidge currently has over 160 miles of fiber optic cabling in place with a portion of those being attached to CenturyLink owned poles. This understanding is also consistent with the existing use other regional utilities under the same CenturyLink joint pole use agreement (such as BTES and Ewin Utilities), which also offer both Electric and Broadband services.

If you have any additional questions, please let us know.

Thank you,



Stacy Evans
Chief Broadband Officer

**BrightRidge**
P.O. Box 1636, Johnson City, TN 37605
www.brightridge.com
Phone/office: 423-952-5198

---

From: Chong, Andrew L <Andrew.L.Chong@centurylink.com>
Sent: Wednesday, September 5, 2018 3:51 PM
To: 'Stacy Evans' <sevans@brightridge.com>; Ice, Andy F <Andrew.F.Ice@centurylink.com>; Honeycutt, Jeff J

1

CL00493

<Jeff.G.Honeycutt@centurylink.com>
Cc: David Addington <daddington@brightridge.com>; Ken Edgar <kedgar@brightridge.com>; Rodney Metcalf <rmetcalf@brightridge.com>; Mark Eades <meades@brightridge.com>; Sikes, J Ryan R <Joseph.R.Sikes@centurylink.com>
Subject: RE: Notes from the follow up meeting for the Joint-Use Make-ready discussions [CenturyLink / BrightRidge]

Stacy,

Two concerns were raised with regards to the contractual agreement we are working under. First, are you aware if a "notice of assignment" was communicated to CenturyLink? We could not find anything in our records to indicate that Johnson City Power Board was operating under the BrightRidge name. Secondly, it was mentioned on the call last week that there is BrightRidge the electric company and the division within (not sure of the name) as the communications company. We may need to explore the need for an adjustment to the existing agreement or to create a new agreement to include the communications division.

I can set up a call with the relevant personnel if needed.

Thanks,

Andrew Chong
Joint Use – Southern Region
Off. 407 889 6650
Cell. 321 356 7055

---

From: Stacy Evans <sevans@brightridge.com>
Sent: Wednesday, September 05, 2018 1:31 PM
To: Chong, Andrew L <Andrew.L.Chong@centurylink.com>; Ice, Andy F <Andrew.F.Ice@centurylink.com>; Honeycutt, Jeff J <Jeff.G.Honeycutt@centurylink.com>
Cc: David Addington <daddington@brightridge.com>; Ken Edgar <kedgar@brightridge.com>; Rodney Metcalf <rmetcalf@brightridge.com>; Mark Eades <meades@brightridge.com>
Subject: RE: Notes from the follow up meeting for the Joint-Use Make-ready discussions [CenturyLink / BrightRidge]

Andrew,

Attached is a revised document reflecting your request for BrightRidge to provide the pole attribute information.

Also attached is a PDF file that Ken Edgar provided said that we use for collecting data for the make-ready inspections. He said that we can start providing the LAT/LONG details as well.

Thank you,



Stacy Evans

Chief Broadband Officer

**BrightRidge**
P.O. Box 1636, Johnson City, TN 37605
www.brightridge.com
Phone/office: 423-952-5198

---

From: Chong, Andrew L <Andrew.L.Chong@centurylink.com>
Sent: Friday, August 31, 2018 7:26 AM
To: 'Stacy Evans' <sevans@brightridge.com>; Ice, Andy F <Andrew.F.Ice@centurylink.com>; Honeycutt, Jeff J <Jeff.G.Honeycutt@centurylink.com>
Cc: David Addington <daddington@brightridge.com>; Ken Edgar <kedgar@brightridge.com>; Rodney Metcalf <rmetcalf@brightridge.com>; Mark Eades <meades@brightridge.com>
Subject: RE: Notes from the follow up meeting for the Joint-Use Make-ready discussions [CenturyLink / BrightRidge]

Can we add under other items wording to reflect the following. For JU recording keeping, BrightRidge to provide pole attributes, example lat/long coordinates, pole height and class, number of attachments etc.

Thanks,
Andrew

---

From: Stacy Evans <sevans@brightridge.com>
Sent: Thursday, August 30, 2018 4:12 PM
To: Ice, Andy F <Andrew.F.Ice@centurylink.com>; Chong, Andrew L <Andrew.L.Chong@centurylink.com>; Honeycutt, Jeff J <Jeff.G.Honeycutt@centurylink.com>
Cc: David Addington <daddington@brightridge.com>; Ken Edgar <kedgar@brightridge.com>; Rodney Metcalf <rmetcalf@brightridge.com>; Mark Eades <meades@brightridge.com>
Subject: Notes from the follow up meeting for the Joint-Use Make-ready discussions [CenturyLink / BrightRidge]

Gentlemen,

Thank you for participating in the Joint-Use Make-ready discussion yesterday at BrightRidge,

Attached is a document that summarizes yesterdays' discussions and the terms that we committed to utilize. Please review the document and let us know if there are any areas of disagreement.

Thank you,



Stacy Evans
Chief Broadband Officer

**BrightRidge**
P.O. Box 1636, Johnson City, TN 37605

3

CL00495

www.brightridge.com
Phone/office: 423-952-5198

This communication is the property of CenturyLink and may contain confidential or privileged information. Unauthorized use of this communication is strictly prohibited and may be unlawful. If you have received this communication in error, please immediately notify the sender by reply e-mail and destroy all copies of the communication and any attachments.

This communication is the property of CenturyLink and may contain confidential or privileged information. Unauthorized use of this communication is strictly prohibited and may be unlawful. If you have received this communication in error, please immediately notify the sender by reply e-mail and destroy all copies of the communication and any attachments.